## Case No. 2,102.

### In re BUELL. ·

[3 Dill. 116;[1] 2 Cent. Law J. 312; 21 Int. Rev. Rec. 116.]

Circuit Court, E. D. Missouri.   March Term, 1875.

REMOVAL OF OFFENDERS TO ANOTHER DISTRICT FOR TRIAL—POWER AND DUTY OF THE DISTRICT JUDGE — CRIMINAL LIBEL WITHIN THE DISTRICT OF COLUMBIA—PUBLICATION, WHAT IS?

1. It seems, that for a libel composed and published in the District of Columbia, the offender may be there indicted and punished as for an offense against the laws of the United States.

2. For a criminal offense committed within the District of Columbia, the offender, if found beyond the District, may be removed to the District for trial.

3. Where a district judge is called upon to issue his warrant for the removal of an alleged offender to the district where the offense was committed, he may look into the indictment, and if it is fatally defective in essential averments to constitute an offense triable in the district in which the indictment was found, he may refuse to issue such a warrant.
[Cited in Re Doig, 4 Fed. 194. 197; U. S. v. Brawner, 7 Fed. 88; Re James, 18 Fed. 854; U. S. v. Rogers, 23 Fed. 661; U. S. v. White, 25 Fed. 718; U. S. v. Horner, 44 Fed. 677; U. S. v. Fowkes, 49 Fed. 53; Re Corning, 51 Fed. 206; Re Terrell, Id. 214; Re Greene, 52 Fed. 106.]
[See U. S. v. Clayton, Case No. 14,814.]

4. The duty of the district judge in such cases considered.

5. The petitioner was indicted in the District of Columbia for the offense of criminal libel, and was discharged on habeas corpus in the eastern district of Missouri from commitment under a commissioner's warrant issued in the last named district—the ground of the discharge being that the indictment failed to allege a publication of the libel in the District of Columbia.
[Cited in U. S. v. Brawner, 7 Fed. 88; U. S. v. Rogers, 23 Fed. 662, 663; U. S. v. White, 25 Fed. 718; U. S. v. Comerford, Id. 903; Ex parte Perkins, 29 Fed. 908; In re Pailiser, 136 U. S. 266, 10 Sup. Ct. 1037.]

6. What constitutes a publication in the legal sense, within the District, considered.

[Appeal from the district court of the United states for the eastern district of Missouri.]

This is an appeal by the United States from an order made by the Hon. Samuel Treat, judge of the district court of the United States for the eastern district of Missouri, on the 9th day of March, 1875, in a proceeding by habeas corpus [unreported], discharging Augustus C. Buell from the custody of the marshal for said district, and refusing, on the motion of the district at-

torney, to issue a warrant for the removal of the said Buell for trial to the District of Columbia.

The material facts are these: Buell was indicted on the 2d .day of July, 1874, in the supreme court of the District of Columbia, for criminal libel on one Zachariah Chandler. The indictment charges that Buell, "on the 19th day of February, 1874, in the county of Washington and District of Columbia, of his malice, etc., did compose and write a certain false, etc., libel of and concerning the said Zachariah Chandler, in the form of a newspaper article, printed in a newspaper called and known as the Detroit Free Press, printed in the city of Detroit and state of Michigan, as follows" (here setting out the libellous matter in "said newspaper article printed as aforesaid"); "which said scandalous, etc., libel he, the said Augustus C. Buell, afterwards, to wit, on the day and year aforesaid, and in the county and district aforesaid, did then and there , unlawfully, etc., publish and cause to be published, to the great damage, etc., contrary to the form of the statute," etc., etc. Buell being found in the eastern district of Missouri, William Patrick, Esq., the United States attorney for the said district, filed an official information, not under oath, before Enos Clarke, Esq., a commissioner of the United States for the said district, charging Buell with the above offense, and accompanying the information with an exemplified copy of the indictment; and on ·March 4, 1875, the commissioner, after a hearing (Buell not having found bail), issued his warrant committing Buell to the "custody of the marshal, to await the action of the judge of the United States district court for the eastern district of Missouri, on his receiving information of said Buell's commitment, that he may be removed from said eastern district of Missouri to said District of Columbia, for trial pursuant to law." Buell sued out a writ of habeas corpus from the said district judge, which was served on the marshal, who made return that he held the prisoner by virtue of the said warrant, which, with a copy of the indictment, is made a part of his return. Upon hearing the petition for habeas corpus, the district judge made an order discharging Buell from the custody of the marshal and refusing to order his transfer to the District of Columbia for trial. The district attorney prayed an appeal to the circuit court (Rev. St. § 763), which was allowed; and the matter was, after argument, submitted to the court, March 23, 1875. The jurisdiction of the circuit court of the appeal was conceded by counsel. [Order of the district court affirmed.]

William Patrick, U. S. Dist. Att'y.
James O. Broadhead, for Buell.

DILLON, Circuit Judge. In the argument before me, the counsel for Mr. Buell has not

---

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

maintained that the matter charged in the indictment to have been composed and published by him concerning Mr. Chandler is not in its nature libellous, and there is no doubt that it is so. Nor has the counsel for Mr. Buell controverted the position that for a libel composed and published in the District of Columbia the offender may be there indicted and punished as for an offense against the laws of the United States. And of this opinion was the learned judge of the district court—that opinion resting upon the act of congress of February 27, 1801 (2 Stat. 103), adopting and continuing in force within the District of Columbia the laws of Maryland; the act of February 25, 1865 (13 Stat. 439), recognizing libel as an indictable offense against the United States in the District of Columbia, and the decisions of the supreme court of the United States concerning the effect of the above mentioned act of February 27, 1801. Rhodes v. Bell, 2 How. [43 U. S.] 397; U. S. v. Simms, 1 Cranch [5 U. S.] 258; Stelle v. Carroll, 12 Pet. [37 U. S.] 205; Kendall v. U. S., 12 Pet. [37 U. S.] 524; Ex parte Watkins, 7 Pet. [32 U. S.] 575.

By the act of 1801, says Chief Justice Taney, "the common law in civil and criminal cases, as it existed in Maryland at the date of this act of congress (February 27, 1801), became the law of the District of Columbia on the Maryland side of the Potomac." The Virginia portion was retroceded in 1846. 9 Stat. 33. It will therefore be assumed that the offense of libel in the District of Columbia is an offense against the United States. for which the offender may be there indicted as at common law, and punished. This being so, and Mr. Buell having been there indicted for such an offense, one inquiry is, whether there is any law authorizing the removal of persons found beyond the District of Columbia to that district for trial for offenses committed therein. In this respect there is no difference between libel and other offenses, and the question is a general one, whether, for any offense committed in the District of Columbia against the laws of the United States, the offender found elsewhere can be removed there for trial. On this point, under the law as it stands, I have no doubt. The authority is ample, and the language of the Revised Statutes (section 1014), in connection with the act of June 22, 1874 [18 Stat. 193], removes the doubts arising on the words "such court of the United States as by this act (the judiciary act of 1789) has cognizance of the offense." The District of Columbia is not a sanctuary to which persons committing offenses against the United States may fly and be beyond the reach of justice. nor is the law so defective that persons there committing such offenses and escaping or found elsewhere, cannot be taken back there for trial. I agree to the views in general of the district judge on this point, as expressed in his opinion, which ac-

companied the record in the case, and do not think it necessary to enlarge upon it. The statute provides that United States commissioners and certain magistrates, "for any crime or offense against the United States," may "arrest and imprison or bail the offender for trial before such court of the United States as by law has cognizance of the offense." Rev. St. § 1014. An information was filed before Commissioner Clarke, who committed the prisoner to the custody of the marshal. In such a case, the further provision is that "where any offender is committed in any district other than that where the offense is to be tried, it shall be the duty of the judge of the district where such offender is imprisoned, seasonably to issue, and the marshal to execute, a warrant for his removal to the district where the trial is to be had." Rev. St. § 1014. On the proceedings before him, the district judge refused to issue the warrant of removal and discharged the prisoner; and the question is whether his action in this case ought to be reversed.

The district judge, in making this order, proceeded upon the ground that he might properly look into the indictment, and if it was fatally defective in essential averments to constitute an offense triable in the District of Columbia, he might refuse to issue the warrant for the prisoner's removal. It is argued that the question of the sufficiency of the indictment is for the court in which it was found, and not for the district judge on such an application. In re Clarke [Case No. 2,797]. I cannot agree to this proposition in the breadth claimed for it in the present case. This provision devolves on a high judicial officer of the government a useful and important duty. In a country of such vast extent as ours, it is no light matter to arrest a supposed offender, and, on the mere order of an inferior magistrate, remove him hundreds, it may be thousands, of miles for trial. The law wisely requires the previous sanction of the district judge to such a removal. Mere technical defects in an indictment should not be regarded; but a district judge who should order the removal of a prisoner when the only probable cause relied on or shown was an indictment, and that indictment failed to show any offense against the laws of the United States, or showed an offense not committed or triable in the district to which the removal is sought, would misconceive his duty and fail to protect the liberty of the citizen. It is the constitutional right of the citizen to be tried in the district in which the offense imputed to him is alleged to have been committed, and not elsewhere. Article 2, § 2. In this case the district judge discharged the prisoner on the ground that the indictment failed to show that the alleged libel was published in the District of Columbia, but showed rather that the offense charged

therein was an offense, if at all, against the laws of Michigan. If this is a proper view of the indictment, his action was unquestionably proper. The language of the indictment is peculiar. It was only necessary for the pleader to have averred that the defendant did compose and publish the libellous matter, setting it out, within the District of Columbia. Such are the precedents. Why is it alleged, out of the ordinary course, that the libel was composed and written in the form of a newspaper article, and printed in the Detroit Free Press, in the state of Michigan, and afterwards, to-wit, on the day and year aforesaid, published in the District of Columbia? The district attorney, notwithstanding some old English cases, very properly admitted that publication by the defendant in the District of Columbia was essential to the offense, and that if this libel was published in Michigan by the procurement of the defendant, he could be there indicted for it. But he contended that if the paper containing the libellous article was afterwards published (in the legal sense) by the defendant in the District of Columbia, he could also be there indicted for it as an offense against the United States, and he claimed that, in this aspect of the question, the indictment was sufficient to charge such an offense. Whatever may be the correctness of the contention of counsel in these respects, it seems to me quite doubtful whether the indictment intended to charge a substantive publication by the defendant in the District of Columbia, or any publication in that district, except so far as composing a libel there for publication in a newspaper elsewhere is in law a publication in the district. This, without more, would not be a publication in the district. Upon the authorities, it seems clear that if the defendant composed a libel in the District of Columbia with intent to have it published in a newspaper in Michigan, and it was there published by the defendant's procurement or consent, he would be liable to indictment in the latter state. 1 Russ. Crimes, 258, and cases cited; 3 Chit. Cr. Law, 872; Rex v. Johnson, 7 East, 68; Com. v. Blanding, 3 Pick. 304. But the indictment would then be for an offense against the laws of the state of Michigan, and not of the United States. Therefore, the present indictment states facts which show a violation of the laws of Michigan. But it is contended that it also shows an offense against the laws of the United States in the District of Columbia. Merely composing the libel in the district would not be sufficient, as the whole corpus delicti, which includes publication in the district, is essential. If it had been intended to charge that the defendant not only wrote the libel in the District of Columbia, but, after its publication in the Detroit Free Press, he had also published it in the District of Columbia, in any manner which in law constitutes a publication, the pleader should either have followed the precedents and omitted all reference to the publication in Michigan, or, if he alleged such publication, he should have made a positive and plain allegation of a substantive and distinct publication by the defendant of the libel in the District of Columbia.

As above remarked, the most natural construction of the indictment is that it is framed upon the erroneous legal notion that if a libel is composed within the District of Columbia for publication elsewhere, and it is accordingly published, this, without more, is a publication in the district, and makes the offense complete. But suppose that it can be deduced that the pleader intended to charge a distinct, substantive publication of the libel by the defendant in the District of Columbia, it can hardly be expected that the well-known requirements of certainty in the allegations of an indictment can be disregarded, and that the court will supply, by inference and argument, the defects or omissions in the indictment. The most essential ingredient of libel is the publication; and the all-essential element of the offense charged in the present indictment is the publication by the defendant within the District of Columbia. The uncertainty of the indictment in the latter respect is sufficient to vitiate it. As the grand jury have not plainly said that the defendant published the article in the District of Columbia in addition to the publication in Michigan, the court cannot intend that they meant to say it. It is a fundamental doctrine in English and American law that there can be no constructive offenses; that before a man can be punished his case must be clearly within the law; the charge is to be unmistakably set forth in the indictment, and if there be uncertainty or fair doubt whether the law embraces the act, or the indictment sufficiently charges the offense, the doubt is to be resolved in favor of the accused. U. S. v. Morris, 14 Pet. [39 U. S.] 464; U. S. v. Wiltberger, 5 Wheat. [18 U. S.] 76. I have no hesitation in applying these liberal and just principles to the present case, because if libel in the District of Columbia be an indictable offense against the United States, it is an exception, curiously brought about, to the general rule that there are no common law offenses against the general government, and because the defect in the present indictment is not merely formal or technical, but goes to the gist of the offense for which the prisoner is sought to be removed.

The provision (Rev. St. § 731) that when any offense is commenced in one district and terminated in another, the trial may be had in either, and the offense may be deemed to have been committed in both, although urged by the district attorney, has, in my judgment, no application to this case. The argument is that if the defendant composed

the libel in Washington and sent it to Michigan for publication, and it was there published, he may be tried in either place in the courts of the United States. Such an extension of the law of libel can hardly be said to have the sanction of the English courts where prosecutions for libel have been carried very far, and it cannot be very seriously expected that a court in this country will assert any such alarming and dangerous doctrine. Not to mention other fatal objections to the argument, it is sufficient to advert to the fact that, in the case supposed, there is no law in the state of Michigan, where the offense is said to have been "terminated," making libel an offense against the United States. The order of the district court is affirmed, and the prisoner discharged. Ordered accordingly.

NOTE [from original report]. Subsequent to the foregoing opinion a new indictment against Mr. Buell was found in one of the courts of the District of Columbia, and having been again arrested in St. Louis, he brought another petition for habeas corpus before the United States circuit court (Treat, J.), which discharged him from arrest on the ground that the indictment was found by a grand jury of a court having no jurisdiction of the offense.